IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE TROIANO,

Petitioner,

v.

J.E. THOMAS,

Respondent.

Case No. 3:11-cv-01004-BR

OPINION AND ORDER

ANTHONY D. BORNSTEIN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

    Attorney for Petitioner

AMANDA MARSHALL
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Avenue
Suite 600
Portland, OR  97204

    Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. For the reasons that follow, the Court DENIES the Petition for Writ of Habeas Corpus.

## BACKGROUND

On November 1, 2010, this Court imposed a 68-month sentence against Petitioner after he pleaded guilty to one count of Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1),(b)(1)(c). Petitioner has a projected release date of November 11, 2014.

Prior to the sentencing hearing, Petitioner was detained at FCI Sheridan. While Petitioner was there, on June 4, 2010, at approximately 6:45 p.m. BOP Senior Officer Specialist J. Lara walked past cell 108 and noticed a smell of intoxicants coming from inside. Officer Lara opened the door and observed Petitioner "in direct possession of a bag of homemade intoxicants." She noted that the smell of intoxicants was very strong inside the cell. Officer Lara saw Petitioner place the bag he was holding in the toilet and rip it open. Officer Lara also observed two additional inmates who were standing near two trash cans containing intoxicants.

Lieutenant D. Payne took photographs of the intoxicants in the toilet and the two trash cans. Senior Officer Brian Gray tested the intoxicants, which tested positive for .06% alcohol.

2 - OPINION AND ORDER -

Officer Lara wrote Incident Report No. 2024338 which charged Petitioner with a violation of Code 222, Making, Possessing or Using Intoxicants.  The Incident Report also charged a violation of Code 316, "Being in an Unauthorized Area," because Petitioner was not assigned to that cell.

On June 5, 2010, Lieutenant J. Keller delivered a copy of the Incident Report to Petitioner and advised Petitioner of his rights.  Petitioner indicated he understood.  According to Lieutenant Keller, Petitioner then stated "It's right."

On June 8, 2010, the Unit Disciplinary Committee ("UDC") convened to consider the Incident Report.  During the UDC meeting, Petitioner stated:  "Yeah, it was mine, I was helping someone out."  The UDC referred the Incident Report to the Discipline Hearing Officer ("DHO") for a hearing.  Petitioner signed a Notice of Discipline Hearing Before the DHO indicating he did not wish to have a staff representative or to have witnesses at the DHO hearing.

On June 12, 2010, DHO Daniel Cortez conducted a disciplinary hearing.  During the hearing, Petitioner stated:  "I was in possession of the intoxicants and I was in someone else's cell. I was not supposed to do either. I wasn't drinking." Petitioner did not offer any documentation or other evidence in his defense.

DHO Cortez considered Petitioner's admission, his prior admissions to Lieutenant Keller and the UDC, as well as the

3 - OPINION AND ORDER -

written statement of Officer Lara, a memorandum submitted by
Senior Officer Gray, and the photographs taken by Lieutenant
Payne.  The DHO found Petitioner committed the prohibited acts as
charged.

As sanctions for the Code 222 violation, the DHO disallowed
27 days of good conduct time ("GCT") and imposed 21 days of
Disciplinary Segregation and 45 days of loss of commissary
privileges.  For the Code 316 violation, the DHO imposed an
additional 45 days of loss of commissary privileges, which was
suspended pending 180 days of clear conduct.  A copy of the DHO's
report was addressed to Petitioner and placed in the inmate mail
on July 9, 2010.  Petitioner did not appeal the DHO's decision.

On November 29, 2010, at approximately 6:50 a.m., Senior
Officer Specialist P.L. Campbell conducted a search of
Petitioner's cell.  Officer Campbell found a trash can covered
with a towel in Petitioner's locker.  In the trash can, Officer
Campbell found a yellow bag containing a liquid which emitted a
strong odor of grapefruit.  Officer Campbell tested the liquid for
intoxicants.   The liquid tested positive for .40% alcohol.
Officer Campbell wrote Incident Report No. 2095752 charging
Petitioner with violating Code 222, "Making, Possessing, or Using
Intoxicants."

On November 29, 2010, Lieutenant M. Morris-Silveira delivered
a copy of the Incident Report to Petitioner and advised Petitioner

of his rights.  Petitioner indicated he understood.  According to
Lieutenant Morris-Silveira, Petitioner then said "It belongs to
me.  I made it out of grapefruit."

On December 1, 2010, the UDC convened to consider the
Incident Report.  During the UDC meeting, Petitioner stated:  "It
was grapefruit juice."  Based on Officer Campbell's statement in
the incident report and the positive reading for intoxicants, the
UDC referred the Incident Report to the DHO for a hearing.
Petitioner signed a Notice of Discipline Hearing Before the DHO
indicating he did not wish to have a staff representative or to
have witnesses at the DHO hearing.

On December 10, 2010, DHO J. Roszel held a disciplinary
hearing.  During the hearing, Petitioner stated:  "I made the
juice from grapefruits I got at breakfast.  I took possession
because it was in my locker.  I was attempting to do something
with it."  Petitioner did not offer any documentation or other
evidence in his defense.

The DHO considered Petitioner's statements at the DHO hearing
and to the UDC and Lieutenant Morris-Silveira.  The DHO also
considered the written Incident Report, as well as a memorandum
written by Officer Campbell which stated the following:

> On 29 November 2010, at approximately 0658, after
> departing cell 203, Inmate Troiano/72379-065, called to
> me, stating he needed to talk to me.  After entering the
> officer station Troiano indicated that hooch is his and
> his roommate has no knowledge.  He asked me several

5 - OPINION AND ORDER -

times not to report the finding the hooch to the
Operations Lt and for me just to have him pour out down
the toilet while I watch.  He stated he would move to a
different cell and restrict himself in his room and not
come out for the rest of the day.

The DHO found Petitioner committed the prohibited act as
charged in the Incident Report.  By way of sanctions, the DHO
disallowed 27 days of GCT and imposed 20 days of disciplinary
segregation and 45 days of loss of commissary privileges.  The
loss of commissary privileges was suspended pending 180 days clear
conduct.  However, because Petitioner had not maintained clear
conduct for 180 days since his previous Incident Report, the DHO
executed the sanction of 45 days of loss of commissary privileges
from Incident Report 2024338.  A copy of the DHO's written report
was addressed to Petitioner and placed in the inmate mail on
December 17, 2010.  Petitioner did not appeal the DHO's decision.

On August 18, 2011, Petitioner filed his Petition for Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2241 in this Court.  In the
Petition he alleges his due process rights were violated in the
course of both disciplinary proceedings.  Respondent argues
Petitioner is not entitled to relief because he failed to exhaust
his available administrative remedies and because, in any event,
he was provided all the process due under the circumstances.

## DISCUSSION

### I.   Exhaustion of Remedies

In general, federal prisoners must exhaust their administrative remedies prior to filing a habeas corpus petition under 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)(per curiam). Although the exhaustion requirement is not jurisdictional, this court may dismiss a habeas petition for failure to exhaust administrative remedies. *Id.* Exhaustion may be excused if the administrative remedies are inadequate, futile, or where pursuit of the administrative remedies would cause irreparable injury. *See Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004).

Petitioner argues exhaustion of remedies is not jurisdictional and that it should be excused because it is now futile to do so. While it appears Petitioner did not diligently pursue his administrative remedies, the Court nevertheless excuses the exhaustion requirement in the circumstances of this case in order to reach the merits which, as noted, results in the denial of the Petition in any event.

### II.  Due Process Rights

#### A.   Legal Standards

In order to obtain relief pursuant to 28 U.S.C. § 2241, a petitioner must establish that he is "in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3). Habeas corpus jurisdiction is available under § 2241 for a prisoner's claim that he has been denied good conduct credits without due process of law. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989).

It is well established that an inmate must be afforded procedural protections before he can be deprived of a protected liberty interest, which includes good conduct time credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). However, "[p]rison disciplinary hearings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Due process in prison disciplinary hearings requires: (1) the right to appear before an impartial decision-maker; (2) 24-hour advance written notice of the disciplinary charges; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-77; *Hill*, 472 U.S. at 454; *see also Argento v. Thomas*, 2010 WL 3661998, *4 (D. Or. Sept. 17, 2010).

8 - OPINION AND ORDER -

The substantive requirements of due process are satisfied if
there is "some evidence" to support the decision by the prison
disciplinary officials. *Hill*, 472 U.S. at 454. The Supreme Court
explained the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not
> require examination of the entire record, independent
> assessment of the credibility of witnesses, or weighing
> of the evidence. Instead, the relevant question is
> whether there is any evidence in the record that could
> support the conclusion reached by the disciplinary
> board.

*Id.* In order for a litigant to prevail on a claim of insufficient
evidence in a disciplinary hearing context, he must show that the
record in his case is "so devoid of evidence that the findings of
the . . . board were without support or otherwise arbitrary." *Id.*
at 457.

**B.   Analysis**

**1.   Incident Report 2024388**

Petitioner argues his due process rights were violated by the
imposition of disciplinary sanctions in the form of loss of good
time credits for the June 4, 2010, incident because there was not
reliable evidence that the liquid found in his cell was anything
other than grapefruit juice. Petitioner's argument is patently
without merit. At the disciplinary hearing on June 12, 2010,
Petitioner admitted to the DHO "I was in possession of the
intoxicants and I was in someone else's cell. I did know I was

9 - OPINION AND ORDER -

not supposed to do either. I wasn't drinking it." Cortez Decl., Exh. 2, p. 3. This admission, along with the evidence that the reporting officer smelled a strong odor of intoxicants in the cell and that the liquid found in the cell was tested positive for the presence of alcohol is sufficient for the DHO to conclude Petitioner committed the prohibited act.

Petitioner also argues the June 2010 sanction violated his due process rights because he had not yet been sentenced for his crime and could not therefore be sanctioned with the loss of good time credit. In *Resnick v. Adams*, 37 F.Supp.2d 1154 (C.D. Cal. 1999), the same argument was considered and rejected. This Court agrees with the analysis in *Resnick*.

Pretrial detainees may not be punished by prison officials for the crime or crimes that led to their incarceration. *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). They may, however, be disciplined for misconduct they commit while awaiting trial and/or sentencing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). Imposing sanctions on a pretrial detainee for misconduct committed during his detention is "constitutional if it also serves some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation." *Bell*, 441 U.S. at 538-39.

A federal prisoner who is serving a term of imprisonment pursuant to a sentence of more than one year (other than a term

10 - OPINION AND ORDER -

for the duration of the prisoner's life), may receive up to 54 days of credit per year for good conduct.  18 U.S.C. § 3624(b)(1). Although pretrial detainees do not automatically earn good time credit, they may be recommended for good time credit for the time spent in pretrial or pre-sentence custody.  *See* 28 C.F.R. § 523.17(1) ("[a] pretrial detainee may not earn good time while in pretrial status.  A pretrial detainee, however, may be recommended for good time credit.  This recommendation shall be considered in the event that the pretrial detainee is later sentenced on the crime for which he or she was in pretrial status.")  However, "if the Bureau determines that . . . the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines is appropriate."  18 U.S.C. § 3624(b)(1).

As in *Resnick*, Petitioner was eligible to be awarded up to 54 days of good time credit annually, provided he was later sentenced to a prison term exceeding one year on his offense of conviction and he satisfactorily complied with institutional regulations. Due to his disciplinary violation, however, Petitioner lost 27 days of good conduct time he could have been eligible to receive. Because federal pretrial detainees may be punished for prison misconduct by disallowing good time credit, and because Petitioner

11 - OPINION AND ORDER -

received the process he was due, his challenge to the June 2010 disciplinary sanction lacks merit.

### 2.    Incident Report 2095752

Petitioner argues the evidence was not sufficient for the DHO to find Petitioner committed a violation in connection with the November 2010 incident. Again, however, the Court concludes the record contains "some evidence" from which a DHO could conclude Petitioner was guilty of the making, possessing, or using intoxicants. In the incident report prepared by Officer Campbell, he stated that during a November 29, 2010, search of Petitioner's cell he found a towel covering a trash containing a yellow bag of liquid which smelled strongly of grape fruit. A test of the liquid showed it contained alcohol. In a separate memorandum on that same date, Officer Campbell related what happened after he left Petitioner's cell:

> . . . [Petitioner] called at me, stating he needs to talk to me. After entering the officer station Troiano indicated that hooch is his and his roommate has no knowledge. He asked me several times not to report the finding the hooch to the Operation Lt and for me just to have him pour out down the toilet while I watch. He stated that he would move to a different cell and restrict him self in his room and not come out for the rest of the day.

Cortez Decl., Exh. 3, p. 7. Finally, at the disciplinary hearing, Petitioner stated "I made the juice from grapefruits I got at breakfast. I took possession because it was in my locker. I was attempting to do something with it." Cortez Decl., Exh. 3, p. 3.

Petitioner argues the test results on the liquid are unreliable, but he provides no evidence to support this assertion. Petitioner also asserts Officer Campbell somehow confused the intoxicants found in his cell with those found in another inmate's cell but again, provides no evidence in support.  Finally, Petitioner's present assertion that the liquid was only juice is not sufficient.  The DHO relied on "some evidence" that could lead a reasonable person to conclude Petitioner possessed alcohol. Accordingly, Petitioner received the process he was due for the November 2010 disciplinary sanction.

### CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus.

IT IS SO ORDERED.

DATED this ___28___ day of June, 2011.

_____
ANNA J. BROWN
United States District Judge